TAX-PAYERS OF MILAN *v.* TENNESSEE CENTRAL RAIL-
ROAD COMPANY *et al.*

AND

MAYOR AND ALDERMEN OF TRENTON *v.* TENNESSEE
CENTRAL RAILROAD COMPANY *et al.*

1. CORPORATIONS, MUNICIPAL. *Power to issue bonds.* Municipal corporations can only subscribe for stock in railroads and issue bonds under an act of the Legislature conferring the power or right to do so. If the act of the Legislature authorize bonds to be issued of a certain denomination and bearing a certain rate of interest, the municipal corporation has no authority to issue bonds for a greater denomination and an increased rate of interest.

2. SAME. *Same.* An act of the Legislature which authorizes a municipal corporation to subscribe for stock in a railroad, and " to lay and collect taxes to pay interest on the bonds which may be issued," does not confer authority to issue bonds.

3. SAME. *Bonds.* Bonds, being issued without authority of law, are void; are not negotiable, and their possession gives no right to the holders to be repaid by the corporation the amount paid for them.

FROM GIBSON.

Appeal from the Chancery Court at Trenton. JOHN SOMERS, Ch.

T. E. HARWOOD and HILL & WILLIAMSON for complainants.

W. A. COOPER and L. W. TALIAFERRO for defendants.

TURNEY, J., delivered the opinion of the court.

On the 19th of July, 1873, the board of mayor and aldermen of the town of Milan passed an ordinance, of which the first section is: "Be it ordained by the board of mayor and aldermen of the town of Milan, Tennessee, That the mayor be and he is hereby authorized and directed, in the name and for and on behalf of the town of Milan, to take one hundred and fifty shares of the capital stock of the Tennessee Central Railroad Company, of one hundred and fifty dollars each, and in payment thereof to execute and deliver on demand to said company the bonds of the corporation of the town of Milan to the amount of fifteen thousand dollars ($15,000), of one hundred dollars each, negotiable and payable to bearer, having

thirty years to run to maturity from the date of their issuance, and bearing interest at the rate of eight per cent per annum, with annual interest coupons attached, the principal and interest payable in New York City or Milan, and for the payment of said bonds and interest the one hundred and fifty shares of the capital stock hereby authorized to be subscribed for, and all dividends accruing thereon, and the faith and property of the citizens of the town of Milan are hereby pledged. The bonds aforesaid to be signed by the mayor, under seal, and countersigned by the recorder and registered by the recorder; also the coupons for the interest shall be signed by the recorder."

On the 1st of January, 1874, the mayor issued twenty of the bonds. About the 4th of March following he issued fifty-five bonds, and about the 14th of April he issued seventy-five bonds, all for one hundred dollars each, at eight per cent interest, and in pursuance of the ordinance recited.

On the 14th of June, 1872, the mayor and aldermen of "the *city of Trenton*," by the first section of an ordinance, provided: "Be it ordained by the mayor and aldermen of the city of Trenton, That the mayor be and he is hereby authorized and directed to subscribe in the name and for and on behalf of the city of Trenton, six hundred shares of one hundred dollars each of the capital stock of the Tennessee Railroad Company, and in payment thereof to execute and deliver on demand to said company, the bonds of the corporation of the city of Trenton to

the amount of sixty thousand dollars, of denominations of from fifty to five hundred dollars each, negotiable and payable to bearer thirty years after date of their issuance, and bearing eight per cent interest per annum, with annual interest coupons attached; the principal and interest to be payable in the city of New York or Trenton, and for the payment of said bonds and interest the six hundred shares of the capital stock hereby authorized to be subscribed for, and all the dividends accruing thereon, and the faith and property of the *town* of *Trenton* are hereby pledged; the bonds to be signed," etc.

There were issued under this ordinance bonds to the amount of about $17,000.

These bills are brought to enjoin the demand and collection of the bonds, to have them declared void, cancelled and delivered up, etc.

It is claimed for defendant that the bonds are valid under sections 4, 5 and 15 of the act of the General Assembly, passed February 17, 1870, ch. 53, entitled, "An act to secure the completion of the Tennessee Central & Pacific railroad," as follows:

"Sec. 4. Be it further enacted, That for the purpose of aiding in the building of the Tennessee Central railroad from Fulton, on the Mississippi river, to a connection with the Nashville & Northwestern railroad at Huntingdon, the chairmen or presiding officers of the county courts of the counties of Lauderdale, Dyer, Gibson, Carroll and Crockett, if organized, shall have power and authority to make subscriptions to the stock of said company for such

amounts as they may deem expedient, with the sanc-tion of a majority of the justices of the peace of the respective counties and the approval of the citizens thereof, to be ascertained in such manner as a ma-jority of the magistrates may direct."

"Sec. 5. That the subscriptions thus made shall be paid in the bonds of the respective counties, signed by the chairman aforesaid, of *one thousand dollars each,* and not having more than thirty years to run to maturity, bearing interest at the rate of six per cent per annum, payable semi-annually, at such places as may be designated by the county court, with coupons attached.

"Sec. 15. That the corporate authorities of the towns of Huntingdon, in Carroll county, Milan, Humboldt and Trenton, in Gibson county, and Rip-ley, in Lauderdale county, shall have the same power and authority to make subscriptions to the stock of the Tennessee Central railroad, and to lay and col-lect taxes within their several corporations to pay the interest on the bonds that may be issued, and to create a sinking fund, as is granted to the several counties by this act, in conformity with the consti-tution of the State as amended."

It is conceded that the towns could only sub-scribe for stock and issue bonds under an act of the Legislature conferring the power or right to do so.

If we grant that the 15th section does in fact confer the same powers upon the corporate authori-ties designated as is conferred upon the several coun-

ties, then has the power been pursued? The power is, to issue bonds of "*one thousand dollars each, bearing interest at the rate of six per cent.*" The power claimed and attempted to be exercised in the one case is, to issue bonds of "*one hundred dollars each, at eight per cent interest,*" and in the other, to issue bonds of "*fifty to five hundred dollars at eight per cent.*" So far as we have been able to see, there is nothing in the actions of the two municipal corporations that refers to or claims to act under the statute cited. There is no similarity or relationship between the powers given and those claimed and attempted to be exercised. If the grantees of a power may, as was done in this case, decrease the denominations of the bond and increase the interest, for the same reason it may increase both. If it may issue a bond for $50, or $100, or $500, at eight per cent, it may also issue bonds of $1,500, $2,000, or any greater or less amount, at fifteen or twenty per cent, or a greater or less interest, and if it may increase in the particulars indicated, it may go further and contract or expand the time for which the bonds are to run to maturity. If it may change the power given by the statute in one essential respect or provision, it may extend the change to another and to others, until it has changed it entirely and made a new and different one in its stead.

It is the rule in this State that powers, like the one before us, and which can only be derived in the way pointed out by the constitution and laws of the State, must be strictly construed and pursued.

The next question is, does the 15th section give. a power to issue bonds at all? It certainly gives. the same power to make subscriptions as are given, in section 4, but it does not provide for the issuance of bonds as in section 5. It makes no provision whatever for the issuance of bonds. All that is said upon the subject of bonds is, "to lay and collect taxes, within their several corporations, to pay interest on *the bonds that may be issued.*"

Whether the Legislature or the draftsman of the act had the opinion that there already existed a law authorizing the issuance of bonds, or whether it was. iutended to enact such a law at a subsequent day of the session, we cannot determine. Certain it is that no such then existed; that none such was subse-. quently made, and none such can be created by any reasonable intendment from the act before us.

The construction contended for by the defendants would be to alter the law and terms of the contract, or rather to make a new contract in conformity to. law, for the parties.

As under the law of this State contracts of the. character before us can only be made under a legislative authority, and as all persons are presumed to. know the law, the holders of the bonds must be holden to have had notice of the want of authority. to issue.

The question discussed is conclusive of the case, and makes it unnecessary to consider others which are subordinate to the main issue involved, *i. e.*, the. authority to issue the bonds. We concur in the decree.

of the chancellor that the bonds are void, but reverse so much of the decree as refuses the prayer· to order the bonds delivered up for cancellation until the holders are repaid the amounts they paid for them.    The bonds being void, are not evidences of· · debt, were non-negotiable, and their possession, of itself, gives no right to the holders against the cor-: porations of Milan or Trenton.    If the bondholders have paid money for the use of these corporations, there may be a ground of inquiry in another direction.

The decree will be modified as indicated and affirmed with costs.

COOKE, J., incompetent, and did not preside in this case.